***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Edward Garners, Jr., and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 11 January 2000 as:
 STIPULATIONS
1. The date of the incident giving rise to this claim is 3 April 1997.
2. On 3 April 1997, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On 3 April 1997, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
4. On the relevant dates herein, defendant-employer was self-insured, with RSKCO, Inc., serving as its administering agent.
5. Judicial notice is taken of all Industrial Commission forms in the file for this claim, and for the file associated with I.C. No. 227754, a claim related to a back injury sustained by plaintiff on 1 April 1992.
6. Plaintiff's average weekly is to be determined.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner on 11 January 2000, plaintiff was thirty-eight (38) years old, with his date of birth being 26 April 1961. Plaintiff has graduated from high school, but received no other special training or education. Plaintiff's work history includes jobs with Sperry-Honeywell, Coca-Cola, and in a cabinet shop.
2. Plaintiff was initially employed by defendant in 1989 as a courier, with his duties consisting of picking up and delivering packages. On 1 April 1992, plaintiff sustained an admittedly compensable injury to his back while working in that capacity. This injury was the subject of I.C. No. 227754. Plaintiff was initially treated for this back injury by Dr. Theodore M. Pitts on 19 May 1992. Dr. Pitts diagnosed low back sprain, lumbar internal disc derangement, and pain associated with bilateral spondylosis and spondylolisthesis, and recommended epidural steroid injections.
3. Because plaintiff's condition did not improve with conservative treatment, Dr. Pitts recommended a spinal fusion surgery. Plaintiff was advised by Dr. Pitts that even with the recommended surgery his back condition would never be normal again, and that he would need to be careful with his activities in the future.
4. Plaintiff underwent a spinal fusion surgery performed by Dr. Stephen Grubb 2 June 1994. Regarding plaintiff's ongoing back condition following the surgery, Dr. Pitts opined that because of the surgery, and his 1 April 1992 back injury, plaintiff would be at an increased risk for a new back injury or a change of condition as compared to persons who had not been similarly injured. Dr. Pitts further opined that plaintiff would experience future exacerbations of his back condition. Following his recovery from surgery, plaintiff was assigned a twenty-five percent (25%) permanent partial disability rating to his back.
5. Subsequent to his surgery in 1994, plaintiff returned to work for defendant-employer as a Customer Service Representative, hereinafter (CSR). Plaintiff had also worked in this position during the period between his 1992 injury, and his surgery. As a CSR, plaintiff worked at a counter in a shipping facility where he received packages. Plaintiff's duties as a CSR included greeting customers, assisting customers with packages, moving freight, answering the phone, and working on problem packages. The packages plaintiff worked with in this capacity weighed as much as seventy-five (75) pounds.
6. On 3 April 1997, while working as a CSR, plaintiff was assisting a customer loading a boxed computer into an automobile. In this process, the customer inadvertently dropped their end of the box, requiring plaintiff to suddenly bear the full weight of the computer. As the result, plaintiff experienced the immediate onset of a sharp pain in the left side of his back. Following this incident, plaintiff properly reported it to his supervisor and an injury investigation form was completed.
7. During the period between his 1992 back injury and resulting surgery, and the incident on 3 April 1997, plaintiff has experienced periodic fare-ups of back pain. As a result of these flare-ups, plaintiff continued to receive treatment from Dr. Virginia Pact and Dr. Grubb. However, the credible evidence of record supports a finding that the pain plaintiff experienced at the time of, and following the 3 April 1997 incident was different, and substantially more severe.
8. Following his 3 April 1997 injury, plaintiff completed that day's work and attempted to continue working for defendant in his normal CRS position, and in a modified position. Additionally, because he had a scheduled appointment with Dr. Grubb, plaintiff did not seek immediate medical attention. On 14 August 1998, plaintiff underwent a discography which revealed problems at the L4-L5 and L5-S1 levels. On 8 September 1998, plaintiff underwent a second back surgery which was performed by Dr. Grubb. During this procedure, the hardware from the 1994 surgery was removed and was replaced with titanium. Additionally, a repeat fusion at the L4 level, and a disketomy and interbody fusion was performed.
9. During his deposition, Dr. Grubb opined that it was more likely than not that the 3 April 1997 work related incident significantly aggravated plaintiff's pre-existing, non-disabling back condition. Additionally, Dr. Grubb explained that there was a clinical difference in the condition of plaintiff's back before and after that incident. As for plaintiff's periodic flare-ups, Dr. Grubb testified that each occurrence prior to 3 April 1997 was temporary, and had resolved through conservative treatment. As for the delay between plaintiff's 3 April 1997 injury and the surgery on 10 October 1998, Dr. Grubb testified that this had no effect on his opinions regarding causation, or plaintiff's related disability.
10. Dr. Pitts testified that he would defer to the opinion of Dr. Grubb as to whether the plaintiff's current condition was related to the incident occurring on 3 April 1997. However, assuming that the plaintiff did injure his back at work in April 1997, Dr. Pitts testified that plaintiff's subsequent back problems most likely would be the result of the work related incident on that date, although there was some degree of causal relationship with plaintiff's 1 April 1992 injury, and resulting surgery.
11. As of the date of his deposition on 7 July 2000, Dr. Grubb opined that plaintiff had reached maximum medical improvement regarding the 3 April 1997 incident. Dr. Grubb assigned plaintiff a thirty percent (30%) permanent partial disability rating to his back, which was in addition to the previously assigned twenty-five percent (25%) rating. According to Dr. Grubb, plaintiff is likely to continue to experience flare-ups, or minor exacerbations of his back condition, and will continue to need medical treatment.
12. In preparation for his 10 October 1998 surgery, plaintiff was evaluated by Dr. Brenda Sue Waller, who practices with Dr. Grubb at the North Carolina Spine Center. Dr. Waller has opined that the 3 April 1997 incident was probably causally related to the recurrence of plaintiff's back injury. Additionally, although Dr. Waller was unable to differentiate the 3 April 1997 incident from other flare-ups, she was of the opinion that the incident in question substantially aggravated plaintiff's back condition.
13. Plaintiff has also received treatment for his back condition from Dr. Virginia W. Pact, a neurologist. Dr. Pact first evaluated plaintiff in September 1996, upon referral from Dr. Grubb. Records from Dr. Pact's office indicated that on 4 April 1997, plaintiff telephoned and reported experiencing increased back pain following an incident at work. On the issue of causation, Dr. Pact opined that the 3 April 1997 incident substantially aggravated plaintiff's pre-existing, non-disabling back condition.
14. The credible evidence of record supports a finding that on 3 April 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident of the work assigned. Additionally, the credible evidence of record supports a finding that plaintiff's 3 April 1997 injury by accident in the form of a specific traumatic incident substantially aggravated his pre-existing back condition, necessitating a second fusion surgery which occurred on 10 October 1998.
15. As the result of his 3 April 1997 injury by accident in the form of a specific traumatic incident and related surgery, plaintiff was unable to earn any wages in any employment for the period of 10 October 1998 through 29 September 1999. Since that time, plaintiff returned to work with no restrictions, at his request, although Dr. Grubb has opined that restrictions would be appropriate.
16. As a result of his 3 April 1997 injury by accident in the form of a specific traumatic incident, and related surgery, plaintiff has sustained a thirty-percent (30%) permanent partial disability rating to his back.
17. As a result of his 3 April 1997 injury by accident in the form of a specific traumatic incident and related surgery, plaintiff will continue to require medical treatment.
18. It is undisputed that plaintiff received short term disability and long term disability benefits from an employer funded plan. However, insufficient evidence exists upon which to enter a finding regarding the exact dates these benefits were paid, or the exact amounts.
19. Based upon the available evidence, plaintiff's average weekly wage on 3 April 1997 was $378.47, which yields a compensation rate of $252.33.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on 3 April 1997 was $378.47, which yields a compensation rate of $252.33. G.S. § 97-2(5).
2. On 3 April 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident of the work assigned. G.S. § 97-2(6). Plaintiff's 3 April 1997 injury by accident in the form of a specific traumatic incident substantially aggravated his pre-existing back condition, necessitating a second fusion surgery which occurred on 10 October 1998. Id.
3. As a result of his 3 April 1997 injury by accident in the form of a specific traumatic incident and related surgery, plaintiff is entitled to have defendant pay temporary total disability compensation at the rate of $252.33 per week for the period of 10 October 1998 through 29 September 1999. G.S. § 97-29.
4. As a result of his 3 April 1997 injury by accident in the form of a specific traumatic incident and related surgery, plaintiff is entitled to have defendant pay permanent partial disability compensation at the rate of $252.33 per week for the period of ninety (90) weeks. G.S. §97-31(23).
5. As a result of his 3 April 1997 injury by accident in the form of a specific traumatic incident and related surgery, plaintiff is entitled to have defendant pay for all related medical expenses incurred, or to be incurred. G.S. § 97-25; G.S. § 97-25.1.
6. Defendant is entitled to a credit for short term and long term disability benefits paid to plaintiff. G.S. § 97-42.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $252.33 per week for the period of 10 October 1998 through 29 September 1999. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendant shall pay to plaintiff permanent partial compensation at the rate of $252.33 per week for the period of period of ninety (90) weeks for the thirty-percent (30%) permanent partial disability rating to his back. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
3. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 3 April 1997 injury by accident in the form of a specific traumatic incident and related surgery.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. This fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
5. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER